The STATE of Ohio, Appellee,

v.

BROWN, Appellant.

[Cite as *State v. Brown* (1992), 83 Ohio App.3d 673.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 61214.

Decided Nov. 16, 1992.

*Stephanie Tubbs Jones,* Cuyahoga County Prosecuting Attorney, and *L. Christopher Frey,* Assistant Prosecuting Attorney, for appellee.

*Hyman Friedman,* Cuyahoga County Public Defender, and *Robert M. Ingersoll,* Assistant Public Defender, for appellant.

JAMES D. SWEENEY, Judge.

Defendant-appellant Charles Brown appeals from the trial court's denial of his motion to suppress evidence. For the reasons adduced below, we reverse the trial court and enter final judgment for Brown.

The facts giving rise to the motion to suppress are somewhat conflicting.

The prosecution offered the testimony of the arresting officer, Patrolman Joseph Lucarelli of the East Cleveland Police Department, at the hearing. This officer stated that: (1) on February 18, 1990, a Sunday, he and his partner were patrolling in their squad car in the vicinity of Page and Euclid Avenues at 1:30 p.m.; (2) at that time, he had been on the police force for about two months; (3) he observed the defendant walking with another man down a sidewalk on Page Avenue toward Euclid Avenue; (4) the other male, Michael Williams, was drinking beer from an open container as he walked; (5) as the officers pulled up to the curb, Williams placed the open container on the ground; (6) Brown turned as if to leave the scene as the police approached, but stopped when requested by the officers; (7) the officers stopped the two men, discovered that Williams had outstanding warrants, and arrested Williams; (8) the witness then patted down the defendant "for our safety, for our protection, to check for weapons"; (9) the

witness detected a bulge in Brown's right coat pocket during the frisk; (10) the bulging article, an opaque brown paper bag, was removed from the pocket by the witness; (11) the witness opened the bag and found sixteen smaller plastic baggies, each containing a green vegetable matter which subsequently was identified as marijuana[1]; and (12) the defendant was then placed under arrest and read his rights.

The defendant largely corroborated the officer's testimony, except that: (1) he was walking alone and had only met Williams on the sidewalk shortly before the police arrived; (2) he did not attempt to flee the scene when the police pulled up; and (3) he is twenty-nine years old and has no criminal record.

The court denied the motion to suppress. At that time, Brown pled no contest to one count of trafficking in drugs in violation of R.C. 2925.03.

The court sentenced Brown to one and one-half years in prison and a $2,000 fine. Sentence was suspended and Brown was placed on three years' conditional probation. This timely appeal followed, raising one assignment of error:

"The trial court erred and denied Charles Brown his constitutional right to be free from unreasonable searches and seizures, when it overruled his motion to suppress evidence."

In analyzing the issue at hand, we must make a two-part determination, namely, (1) whether the initial stop and detention of Brown were a proper investigatory stop, and if they were, (2) whether the police exceeded the scope of the protective search by opening the opaque brown paper bag which was found on Brown during the pat-down. We find that each of the two parts above must be answered in the negative for the reasons set forth below.

Pursuant to *Terry v. Ohio* (1968), 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906, police may make a limited investigatory stop when, based upon specific and articulable facts and inferences drawn therefrom, an officer has a reasonable belief that the detainee is engaged in criminal activity. The facts reveal that Brown, at best, was walking with an acquaintance on a Sunday afternoon in the wintertime. There is no indication that the area is one of high crime or that the men made furtive gestures. The acquaintance, Williams, could be justifiably detained by the police due to an open-container violation. However, there was no indication that Brown was involved in criminal activity. As the Supreme Court stated in *Ybarra v. Illinois* (1979), 444 U.S. 85, 91, 100 S.Ct. 338, 342, 62 L.Ed.2d 238, 245, "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." Accordingly, Brown's detention and subsequent pat-down

---

1. The amount of marijuana is not in the record.

were improper. See *State v. Farese* (1990), 71 Ohio App.3d 60, 62–63, 593 N.E.2d 32, 34.

 Even if we were to assume, for sake of argument, that the initial stop of Brown was proper, the subsequent search exceeded the limitations of a *Terry* search. The officer had no reasonable basis to believe that his safety required a pat-down of Brown for weapons. *Terry, supra,* 392 U.S. at 27, 88 S.Ct. at 1883, 20 L.Ed.2d at 909; *State v. Smith* (1978), 56 Ohio St.2d 405, 409, 10 O.O.3d 515, 517, 384 N.E.2d 280, 282. Additionally, once the police had the opaque paper bag in their possession and control, any legitimate concern for their safety was dispelled. *State v. Chambers* (Jan. 27, 1983), Cuyahoga App. No. 45058, unreported, 1983 WL 5717. A pat-down search for weapons is not to be used to discover evidence or contraband. *Terry, supra.* The evidence discovered, which formed the basis for the indictment, should have been suppressed.

Assignment affirmed.

*Judgment reversed*
*and sentence vacated.*

NAHRA, P.J., and KRUPANSKY, J., concur.