*United States v. Peters*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 3rd day of February, two thousand twenty-one.

Present:
> DEBRA ANN LIVINGSTON,
> *Chief Judge,*
> JOSÉ A. CABRANES,
> GERARD E. LYNCH,
> *Circuit Judges.*

---

UNITED STATES OF AMERICA,

> *Appellee*,

> v.                                                         19-3048

NORMAN PETERS, a/k/a Ski,

> *Defendant-Appellant*.

---

| | |
|---|---|
| For Defendant-Appellant: | ROBERT M. FROST, JR., Frost Bussert, LLC, New Haven, CT |
| For Appellee: | ELENA L. CORONADO (Mark H. Silverman, *on the brief*), Assistant United States Attorney, *for* John H. Durham, United States Attorney for the District of Connecticut, New Haven, CT |

Appeal from a judgment of the United States District Court for the District of Connecticut (Bolden, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Norman Peters ("Peters") appeals from a judgment of the United States District Court for the District of Connecticut convicting him of one count of possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and one count of use of a telephone to facilitate a drug trafficking felony, in violation of 21 U.S.C. §§ 843(b) and 843(d)(1). Peters challenges his conviction, arguing that: (1) the district court erred in denying his motion to suppress evidence arising from an April 1, 2016 search of his person; (2) the district court erred in denying his motion for acquittal pursuant to Federal Rule of Criminal Procedure 29; and (3) the district court abused its discretion in denying his motion for a new trial pursuant to Federal Rule of Criminal Procedure 33. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

## A. Motion to Suppress

On appeal from the denial of a suppression motion, "we review a district court's findings of fact for clear error, and its resolution of questions of law and mixed questions of law and fact *de novo*." *United States v. Bohannon*, 824 F.3d 242, 248–49 (2d Cir. 2016). Peters argues that the district court erred in denying his suppression motion because the April 1, 2016 search—during which then-Officer Brendan Phillips ("Officer Phillips") reached into his pants to retrieve a bag containing 14 grams of cocaine—violated the Fourth Amendment. Although Peters concedes that police executed the search incident to his lawful arrest, he insists the search was unreasonably intrusive under the factors set out in *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). We disagree.

2

Generally, "searches conducted . . . without prior approval by judge or magistrate[] are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (internal quotation marks omitted) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). "Among the exceptions to the warrant requirement is a search incident to a lawful arrest," *id.*, which "permits the police to search a lawfully arrested person and areas within his immediate control." *Smith v. Ohio*, 494 U.S. 541, 543 (1990). Of course, "[e]ven if a warrant is not required," a search still "must be reasonable in its scope and manner of execution." *Maryland v. King*, 569 U.S. 435, 448 (2013). In assessing whether a search is unreasonably intrusive, a court "must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell*, 441 U.S. at 559.

On review of these factors, we conclude that the search of Peters's person was reasonable. The first *Bell* factor concerns the scope of the intrusion. *Id.* We have noted that the scope of an intrusion "varies with the type of search" to which an individual has been subjected. *Harris v. Miller*, 818 F.3d 49, 58 (2d Cir. 2016). The district court's findings, in which we discern no clear error, show that Officer Phillips conducted a "reach-in search" of Peters's person—a search "of a clothed suspect [that] does not display a suspect's genitals to onlookers," *United States v. Williams*, 477 F.3d 974, 977 (8th Cir. 2007)—as opposed to a strip search, manual body cavity search, visual body cavity search, or something in between, as Peters suggests. The district court found that Officer Phillips executed the search as follows: He "began [by] patting down Mr. Peters outside of his clothing." Appellant's App'x at 263. Once he "felt Mr. Peters's lower body tense up," he formed a belief "that Mr. Peters was trying to hide something within his buttocks." Appellant's App'x at 263. He then instructed Peters "to squat down" to "make it more difficult

3

to maintain the same muscle tension and hold onto anything in his buttocks." Appellant's App'x at 263. "[U]sing a 'bladed hand' . . . , [he] felt an object inside Mr. Peters's pants, between the top of his buttocks. [He] then reached into Mr. Peters's pants and grabbed the cocaine, which was packaged and wrapped in napkins." Appellant's App'x at 263–64. Ultimately, this search was the least invasive means by which the officers could have recovered the cocaine in Peters's pants, short of asking Peters to retrieve the cocaine himself, *cf. United States v. Sharpe*, 470 U.S. 675, 687 (1985) (noting that the existence of "less intrusive means" does not, by itself, make a search unreasonable), and it obviated the need for any more invasive technique.

The second *Bell* factor concerns the manner in which the search was conducted. 441 U.S. at 559. A search "conducted in a professional manner is more reasonable than one that is not." *See Harris*, 818 F.3d at 59–60. Although Officer Phillips failed to wear gloves when he reached into Peters's pants, the search was otherwise conducted in a professional manner. Moreover, there is no indication in the record—other than Peters's declaration, which the district court declined to credit—that the officers conducted the search in an abusive manner, as was the Court's primary concern in *Bell*. *See* 441 U.S. at 560.

The third *Bell* factor concerns the justification for the search. *Id.* at 559. "[O]fficers must provide a justification that is supported by record evidence." *Harris*, 818 F.3d at 60. Here, the record shows that the officers had probable cause to believe that Peters had stashed cocaine in his pants based on numerous factors, including: the intercepted call between Peters and Bobby Gutierrez ("Gutierrez") regarding a suspected drug transaction; an officer's direct observation of the drug transaction; an officer's observation, when approaching Peters's vehicle during the stop, that Peters made furtive movements as if trying to hide something; the search of Peters's vehicle,

4

which yielded no drugs; the K-9 unit's alert to Peters's groin; and Officer Phillips's pat down, which revealed an object inside Peters's pants.

The last *Bell* factor concerns the location of the search. 441 U.S. at 559. A search that "concerns an [individual's] right to bodily privacy" tends to be more reasonable when "conducted in the presence of only those individuals needed to conduct the search" than when "conducted in the presence of unnecessary spectators." *Harris*, 818 F.3d at 62. Consequently, courts have universally condemned public strip searches as unreasonable. *See, e.g.*, *Campbell v. Miller*, 499 F.3d 711, 719 (7th Cir. 2007) (collecting cases). However, public "reach-in searches," such as the one conducted here, "may be permissible if police take steps commensurate with the circumstances to diminish the potential invasion of the suspect's privacy." *Williams*, 477 F.3d at 977 (upholding a reach-in search in a station house parking lot "open to public view"); *see also United States v. Ashley*, 37 F.3d 678, 682 (D.C. Cir. 1994) (upholding a public reach-in search where the officer testified that he and the suspect "were close enough together so that the public wouldn't see that [the defendant's] pants were unfastened" (alterations omitted)). Here, the district court found that the police conducted the search in "a relatively secluded area with little traffic." Appellant's App'x at 262. And there was no testimony that any member of the public observed the search. Based on the foregoing, we conclude that the search here was reasonable, and therefore lawful, under the Fourth Amendment.

## B. Rule 29

We review *de novo* the denial of a Rule 29 motion for acquittal. *United States v. Persico*, 645 F.3d 85, 104 (2d Cir. 2011). Peters contends the district court erred in denying his motion

5

for acquittal because the government failed to introduce evidence sufficient for the jury to conclude that he intended to distribute cocaine.[1]   We disagree.

Under Rule 29, a court must enter a judgment of acquittal when "the evidence is insufficient to sustain a conviction."   FED. R. CRIM. P. 29(a).   "[A] defendant challenging the sufficiency of the evidence 'bears a heavy burden,' and 'the standard of review is exceedingly deferential.'" *United States v. Martoma*, 894 F.3d 64, 72 (2d Cir. 2017) (quoting *United States v. Coplan*, 703 F.3d 46, 62 (2d Cir. 2012)).   "In evaluating a sufficiency challenge we 'must view the evidence in the light most favorable to the government, crediting every inference that could have been drawn in the government's favor, and deferring to the jury's assessment of witness credibility and its assessment of the weight of the evidence.'"   *Coplan*, 703 F.3d at 62 (quoting *United States v. Chavez*, 549 F.3d 119, 124 (2d Cir. 2008)).   "[W]e will uphold the judgment[] of conviction if '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"   *Id.* (emphasis in original) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

21 U.S.C. § 841(a)(1) criminalizes "knowingly or intentionally . . . possess[ing] with intent to manufacture, distribute, or dispense[] a controlled substance."   To sustain a conviction under this statute, the government must show "that the defendant: (1) knowingly (2) possessed a controlled substance (3) with a specific intent to distribute it."   *See United States v. Gore*, 154 F.3d 34, 45 (2d Cir. 1998).   As to the third of these elements, the government may prove a defendant's intent to distribute "by circumstantial evidence alone."   *United States v. Heras*, 609 F.3d 101, 106 (2d Cir. 2010).   Such evidence may include "the quantity of [the drugs] at issue"

---

[1] Because Peters's conviction for possession with intent to distribute served as the drug trafficking felony underlying his conviction for using a telephone to facilitate a drug trafficking felony, the government was required to prove intent to distribute cocaine to obtain convictions as to both counts.

or "paraphernalia usually possessed by drug dealers, such as scales, beepers, [] other devices, . . . [or] materials needed to process [narcotics] or to package [them]." *United States v. Boissoneault*, 926 F.2d 230, 234 (2d Cir. 1991). Crucially, "a small quantity of drugs standing alone is insufficient to prove an intent to distribute." *United States v. Martinez*, 54 F.3d 1040, 1043 (2d Cir. 1995). But "any amount of drugs, however small, will support a conviction when there is additional evidence of intent to distribute." *Id.*

Here, the evidence was sufficient for the jury to conclude that Peters intended to distribute cocaine, and Peters's contention that the evidence of his guilt stands in equipoise to that of his innocence is without merit. Peters possessed 14 grams of cocaine—an amount far exceeding the 0.1-gram, 0.2-gram, and 0.5-gram packages that, according to expert witness DEA Special Agent Raymond Walczyk ("Agent Walczyk"), cocaine users typically purchase. Although, standing alone, this quantity may be insufficient to demonstrate that Peters intended to distribute cocaine, *see Turner v. United States*, 396 U.S. 398, 422–23 (1970), the government introduced ample additional evidence from which the jury could infer such intent. Foremost among this evidence was Peters's post-arrest call to Gutierrez, during which Peters suggested that he purchased the cocaine from Gutierrez to redistribute it later that evening and described in detail the circumstances of his arrest, evincing a deep familiarity with police investigative techniques. Likewise, during Peters's pre-arrest phone calls with Gutierrez, Peters and Gutierrez spoke familiarly, using a pre-established code to signify the quantity of drugs Peters sought to purchase. Moreover, Peters used a prepaid cell phone to communicate with Gutierrez; as Agent Walczyk testified, although "there is nothing illegal about using a prepaid phone," such phones "are very commonly used by drug traffickers," particularly because they obviate the need for traffickers to give their personal information to a wireless carrier. Appellant's App'x at 290–91.

7

At trial, Peters argued this evidence demonstrated no more than that he was a drug user, buying cocaine in bulk as one might buy paper towels from Costco. But the jury rejected that argument. Given the permissible inferences the jury could have drawn to do so, the district court properly denied the Rule 29 motion.

### C. Rule 33

"We review challenges to a district court's denial of a Rule 33 motion for abuse of discretion, accepting the district court's factual findings unless clearly erroneous." *United States v. Escalera*, 957 F.3d 122, 137 (2d Cir. 2020). Peters maintains that the district court erred in denying his motion for a new trial, again because the government failed to introduce evidence sufficient for the jury to conclude that he intended to distribute cocaine. Again, we disagree.

Under Rule 33, a district court "may vacate any judgment and grant a new trial if the interest of justice so requires." FED R. CRIM. P. 33(a). In evaluating a Rule 33 motion, a court "must examine the entire case, take into account all facts and circumstances, and make an objective evaluation" of whether the record supports a guilty verdict. *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001). However, it must also "strike a balance between weighing the evidence and credibility of witnesses and not 'wholly usurp[ing]' the role of the jury." *Id.* at 133 (quoting *United States v. Autuori*, 212 F.3d 105, 120 (2d Cir. 2000)). "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice." *Id.* at 134.

Here, the district court determined that the weight of the evidence showed that Peters intended to distribute the cocaine recovered from his person, drawing the permissible inferences we outlined above. In light of the district court's thoughtful analysis as to the sufficiency of the evidence, we can discern no abuse of discretion in its decision to deny Peters a new trial. Consequently, we reject Peters's challenge to the district court's decision.

\* \* \*

We have considered Peters's remaining arguments and find them to be without merit.

Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk