[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-12931

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

DEMETRIUS LAMAR RAHMINGS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:21-cr-00262-KKM-SPF-1

_____

Before ROSENBAUM, BRANCH, and GRANT, Circuit Judges.

PER CURIAM:

In this appeal, Demetrius Rahmings argues that his conviction for possession of a firearm by a felon should be vacated because the search that found the weapon violated his Fourth Amendment rights. The district court denied Rahmings's motion to suppress the evidence, finding that Rahmings abandoned any reasonable expectation of privacy in the backpack where he carried the gun when he left the backpack in the home of a friend while fleeing from police. After review, we find no error and affirm.

## I.    Background

In October 2020, Rahmings was wanted under several felony arrest warrants for a shooting incident. Rahmings had been seen at a friend's house in Tampa, Florida, so law enforcement officials set up surveillance there hoping to catch and arrest him. Not long after, Rahmings showed up carrying a white backpack with a University of South Florida ("USF") logo and the number 81 embroidered on it.

The police activated their emergency lights and approached him. Rahmings fled into the house. The officers chased him inside. Within a minute or two, Rahmings emerged from a bedroom with his hands up. Rahmings was no longer wearing the backpack.

After arresting him, the police obtained the homeowner's permission to conduct a protective sweep of the home. The

homeowner specifically said that she did not want guns in the house because she had young children. During the sweep, the police found the USF backpack in the hallway about 10 to 15 feet away from where Rahmings had emerged just before his arrest. They found a handgun in the backpack.

Outside the house, the homeowner asked Rahmings if he had left anything inside her house. Rahmings did not respond. A sergeant then asked Rahmings if a white iPhone found in the house was his, and he confirmed that it was.

Rahmings was indicted on one count of possession of a firearm by a felon pursuant to 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

Rahmings moved to suppress the fruits of the search, arguing that the search of the house and seizure of the backpack violated his Fourth Amendment rights. The government responded that the homeowner consented to the sweep, and Rahmings had abandoned the backpack and lacked standing to challenge the search. Rahmings insisted he did not abandon the backpack because he left it "in a residence that [he] viewed as a secure place to temporarily leave" it.

The district court held an evidentiary hearing, and then entered an order denying the motion. The court agreed that Rahmings had abandoned the backpack, and thus any Fourth Amendment interest, "when he cast it off in the hallway while running from police." The district court also said that, "[t]o the extent that Rahmings object[ed] to the scope of the protective

sweep," he "lack[ed] standing" because he was neither the homeowner nor an overnight guest there.

The case went to a bench trial, and the court found Rahmings guilty. Rahmings was sentenced to 120 months' imprisonment followed by a term of supervised release. Rahmings appealed.

## II.    Discussion

Rahmings argues on appeal that "[t]he district court erred as a matter of law" in denying his motion to suppress because it "erroneously concluded that [he] abandoned the backpack[.]" In Rahmings's view, "[t]he evidence established that [he] simply removed and set aside the backpack in response to law enforcement's efforts to [arrest] him inside the house." Rahmings insists that he "had a valid possessory interest . . . in the backpack," and, "took no action to attempt to hide the backpack," and instead merely put it down in "a home that he was known to frequent" because "he was about to be taken into custody[.]" We disagree.

When reviewing the denial of a motion to suppress, we evaluate the district court's legal conclusions *de novo*, accepting the court's findings of fact unless they are clearly erroneous. *United States v. Ramos*, 12 F.3d 1019, 1022 (11th Cir. 1994). Whether a person abandons property is a factual issue, so we review the lower "court's finding of abandonment . . . under the clearly erroneous standard." *Id.* A finding of fact is clearly erroneous only when, on review of the evidence, we are left "with the definite and firm conviction that a mistake has been committed." *United States v.*

23-12931                Opinion of the Court                5

*Plasencia*, 886 F.3d 1336, 1342 (11th Cir. 2018) (quotations omitted). We find no such error here.

The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated[.]" U.S. Const. amend. IV. Following the Supreme Court's lead, we have held that the Amendment's protections "extend to any thing or place with respect to which a person has a 'reasonable expectation of privacy.'" *United States v. Ross*, 963 F.3d 1056, 1062 (11th Cir. 2020) (quoting *California v. Ciraolo*, 476 U.S. 207, 211 (1986)).

But a person can abandon property and, with it, their reasonable expectation of privacy in that property. *United States v. McKennon*, 814 F.2d 1539, 1545 (11th Cir. 1987). The government bears the burden of proving abandonment. *Ramos*, 12 F.3d at 1023. And "[d]etermining whether an abandonment has occurred requires a consideration of case-specific facts[.]" *Id.* at 1025. "[T]he critical inquiry is whether the person prejudiced by the search . . . voluntarily discarded, left behind, or otherwise relinquished his interest in the property[.]" *Id.* at 1022 (quotations omitted).

Here, the court found the following facts, all of which are well supported by the evidence introduced at the suppression hearing. Rahmings's flight from arrest "indicated an attempt to rid himself of incriminating evidence." The house was not only "not Rahming's residence" but was also a place "known to law enforcement as a hotspot for gang activity." The backpack was

"lying on the floor in the hallway in an area where Rahmings *must have* passed to enter the bedroom from which he emerged when surrendering[.]" (emphasis added). The homeowner "indicated that she had not given Rahmings permission to store his backpack in the hallway when she asked him if he had left anything behind." And Rahmings's "silence in response" to questions about whether he left anything in the house "further evidence[d]" his "intent to distance himself from the backpack"—"particularly when compared to his response to a subsequent question about whether the iPhone belonged to him."

Those findings are more than enough to show abandonment. By voluntarily ridding himself of the backpack to distance himself from incriminating evidence, Rahmings showed an intent to voluntarily relinquish or discard any interest in the property. *See United States v. Williams*, 569 F.2d 823, 826 (5th Cir. 1978) (holding that the defendant abandoned his trailer when he unhooked it from his truck at a rest stop and then drove away while being pursued by federal agents because his purpose "in leaving the trailer unguarded and unlocked in the parking area was to rid himself of the vehicle with its incriminating contents").[1] That inference is only strengthened by the facts showing that Rahmings jettisoned the backpack in the hallway of a home that was not his own, where the guns he brought were not welcome, only for

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

23-12931                Opinion of the Court                7

Rahmings to later decline an opportunity to stake a claim to the backpack after it was seized. *See United States v. Cofield*, 272 F.3d 1303 (11th Cir. 2001) (holding that a defendant abandoned luggage when he left the bags on the ground in a train station, walked away from them, and denied that the bags belonged to him). It does not matter whether Rahmings subjectively hoped to reclaim the backpack later. *Williams*, 569 F.2d at 826 (finding abandonment even when the defendant "retained a hope that he might accomplish two objects: the protection of himself from possession of evidence while he was pursued, and the chance of recovery of the trailer if neither the officers nor anyone else took it.").

Rahmings replies that the Supreme Court's decision in *Smith v. Ohio*, 494 U.S. 541, 543–44 (1990) mandates a ruling in his favor. He is wrong. In *Smith*, the defendant ignored officers' calls to stop and question him, throwing his bag down on the hood of *his own car* before turning to face them. *See id.* When Smith refused to tell the officers what was in the bag, they brushed him aside and searched the bag anyway. *Id.* at 544. The Supreme Court held that Smith had not abandoned the bag in doing so, accepting the lower court's finding that Smith had merely "attempt[ed] to protect his private property from inspection[ ] after throwing it on a car to respond to [the] police officer's inquiry." *Id.* at 543. Rahmings reasons that he, too, was simply protecting his property from inspection. But here, unlike in *Smith*, Rahmings jettisoned the backpack out of his personal vicinity, in someone else's home, and declined to stake a claim to the bag once it was seized. *See Cofield*, 272 F.3d at 1307 n.3 (distinguishing *Smith* on the grounds that

Cofield denied ownership of his luggage and walked away from it). Even if Rahmings's own view of the evidence were similar to *Smith*, the district court's findings were reasonable—and therefore not clear error. *United States v. Almedina*, 686 F.3d 1312, 1317 (11th Cir. 2012) (explaining that, where "the fact pattern gives rise to two reasonable and different constructions, the district court's choice between them cannot be clearly erroneous.").

Thus, we find no error—clear or otherwise—in the district court's finding that Rahmings abandoned the backpack and any reasonable expectation of privacy in it.

We therefore **AFFIRM.**